[Civ. No. 15642.   Second Dist., Div. Three.   July 1, 1947.]

ROBERT JANES, Respondent, v. JULIA IVOLA GOYNE, Appellant.

Connelly & Angelillo for Appellant.

Helen Lee MacKellar for Respondent.

SHINN, Acting P. J.—This controversy between Robert Janes and Julia Ivola Goyne concerns the ownership of real and personal property acquired when the parties were living together as husband and wife, although plaintiff had a wife and defendant had a husband, under marriages which had not been dissolved.   The complaint sought an annulment of a joint tenancy deed, as to defendant's interest, through which the parties derived title, upon the ground of defendant's fraud, and a decree quieting plaintiff's title to said real property and certain household personal property.   Defendant by cross-complaint sought a partition of the real and personal property.   The complaint alleged that in September, 1942, while he was living with defendant, as aforesaid, plaintiff purchased Lot 34 of Tract 12194 in the city of Los Angeles,

subject to certain encumbrances, and caused title to be placed in his name and that of defendant, as joint tenants; that he also purchased some $3,000 worth of furniture which was placed in the home occupied by the parties, and purchased for $450 certain furniture and furnishings from the defendant. In addition, he expended large sums for clothing, jewelry, and other gifts for the benefit of defendant and defendant's son and daughter. It was also alleged that defendant promised she would marry plaintiff as soon as they had both procured final judgments of divorce from their respective spouses; that plaintiff procured such a decree in September, 1941, and defendant procured her final decree in October, 1941; that all the money used in acquiring said property was provided by plaintiff; that plaintiff believed and relied upon the promise of defendant that she would marry him; that defendant made said promise without intention to perform the same and for the sole purpose of inducing plaintiff to put said real property in the names of the parties in joint tenancy; that after said final decrees of divorce were issued, defendant refused and ever since has refused to marry plaintiff, but claims an interest as joint tenant in the real property and an interest in the household furniture purchased, as aforesaid, by plaintiff. By her answer and cross-complaint defendant alleged the cohabitation while each of the parties was under legal disability to marry, but that they had nevertheless entered into a matrimonial ceremony in Tijuana, Baja California, Mexico; that defendant in good faith believed that cohabitation and representation that the parties were husband and wife were sufficient to and did constitute a valid marriage. Defendant asserted the interest of a joint tenant in the real property and also in the personal property. After judgment for plaintiff annuling the conveyance to defendant of an interest in the property and quieting plaintiff's title thereto, and to the personal property, defendant instituted this appeal. The sole contention upon the appeal is that the evidence was insufficient to justify the findings.

Among the findings was one that the allegations of the complaint were true and that the allegations of defendant's cross-complaint with respect to the Tijuana marriage, and her belief in its validity, were untrue. Our attention is not called by either party to the testimony with relation to this alleged marriage, or other material facts in issue. Instead, it is stated in appellant's opening brief: ''That in order to

determine whether or not the evidence is sufficient to sustain the position of respondent, it is necessary to consider the reporter's transcript as a whole.'' Nevertheless, we have made an independent examination of the transcript. Plaintiff testified to many promises made by defendant that she would marry him; that when he bought the real property defendant promised that she would marry him if he would place the property in joint tenancy; that he believed and relied upon her promises and otherwise would not have given defendant an interest in the property. He also testified that he had purchased with his own funds the household furniture and furnishings in which defendant claimed an interest. Defendant denied having promised to marry plaintiff, testified that she was employed as a waitress while she was living with plaintiff, that from her wages and tips she purchased different articles of household furniture, and she denied that plaintiff had ever purchased such articles from her. However, plaintiff produced corroborative evidence of his testimony that he had paid defendant $450 as the purchase price of furniture that he bought from her. Defendant's earnings as a waitress were shown to have been meager and scarcely above her personal expenses. There was ample evidence that plaintiff's money paid for the personal property.

We have gleaned from the record that the parties occasionally went to San Diego to visit defendant's mother and that they were in Tijuana on more than one occasion; that there was no record produced of a marriage in Tijuana; that defendant testified that she and plaintiff went through a marriage ceremony there and that plaintiff testified that no such ceremony had been performed or planned. The parties did, however, represent to defendant's mother that they had engaged in a ceremony of marriage. It appears that defendant was 47 years of age, that she had contracted three prior marriages, had secured two divorces and one annulment, and that the annulment was granted upon the ground that the man to whom she was married had not procured a final decree of divorce from a former wife. One of plaintiff's witnesses, a Mrs. Wells, testified that defendant had stated to her, during the period of the cohabitation of the parties, that she had married plaintiff in Yuma, but when reminded that she could not marry legally until she had received her final decree she admitted that they could not be married, and had not been married, but stated that she did not want her daughter to

know that she was not married to plaintiff. This witness also testified that she had heard plaintiff ask defendant to marry him and that defendant had replied, ''Well. I don't feel very well right now, Don [plaintiff]. I would rather wait until I am feeling better,'' and that when plaintiff left the room defendant was asked, ''When are you going to get married?'' and replied, ''O, Ruth, I never intend to marry Don. Just as soon as I get to feeling better I am going to Arizona to live with my daughter.'' There was therefore ample evidence to justify a finding that there was no marriage ceremony in Mexico, and even if there had been an attempted marriage in Tijuana the court would have been fully justified in finding that defendant did not believe it to be a valid marriage. She apparently was well informed as to the limited effect of an interlocutory decree of divorce. It is unnecessary to quote the record further to show that there was sufficient evidence to support the allegations of the complaint and to disprove the affirmative allegations of the cross-complaint.

There is no doubt as to the law that is applicable to the facts found. Plaintiff purchased the real property and placed it in the joint tenancy of himself and defendant in reliance upon repeated promises of defendant that she would marry him when she became free to do so; defendant lived in illicit relationship with plaintiff and, although she promised him that she would marry him if he would place the property in joint tenancy, she did not at any time intend to marry him. Although she denied having promised to marry plaintiff, she claimed that she had married him in Mexico. Upon these facts plaintiff could properly claim that he had been made the victim of defendant's fraud. The interest in the real property which defendant acquired under the joint tenancy deed came to her as a gift from plaintiff which was induced by her fraud. There can be no question as to the plaintiff's right to have the gift annulled upon that ground. It appears that he was anxious to make defendant his wife until she repeatedly and finally refused to marry him. The fact that he was living with her in an illicit relationship did not justify defendant in the perpetration of a fraud upon him. He did not give her an interest in the property to induce her either to assume or to continue that relationship, but for the purpose of ending it and joining with her in one that would be legal and respectable. Such is the case as it was viewed by the

trial judge, and as we must take the same view of it, for the reasons stated, it is a proper case for equitable relief. The findings of fraud entitle plaintiff to have the joint tenancy deed annulled. (*Cox* v. *Klatte,* 29 Cal.App.2d 150 [84 P.2d 290].)

Defendant relies upon *McWhorter* v. *McWhorter,* 99 Cal. App. 293 [278 P. 454], as supporting her position that the joint tenancy property should have been ordered sold and the proceeds equally divided, as was done in that case. It was there held that the invalidity of an alleged common law marriage, or the belief of the parties that it was valid, did not affect the character of joint tenancy property which had been acquired by the joint efforts of the parties while living together, and voluntarily placed in joint tenancy. No question of fraud was involved. Reliance is also placed upon the rule that a woman who lives with a man as his wife in the belief that a valid marriage exists is entitled, upon termination of their relationship, to share in the property acquired by them during its existence. (*Feig* v. *Bank of Italy etc. Assn.,* 218 Cal. 54 [21 P.2d 421].) The findings were adverse to defendant upon all the material issues affecting the real property and the personal property. They have sufficient support in the evidence and bar her from relief under the equitable rules which she invokes.

The judgment is affirmed. The attempted appeal from the order denying defendant's motion for new trial is dismissed.

Wood, J., and Kincaid, J. pro tem., concurred.